### THE PEOPLE v. MARTIN J. GUSTIN.

*Repeals—Statutory penalties—Intent.*

**1.** Repeals by implication are not favored. So *held* where the alleged repeal would have reduced a criminal penalty.

**2.** How. Stat. § 9286 which punishes the keeping of a house of ill-fame by a fine of $300 or a year's imprisonment is not repealed by Act 136 of 1883 which classes the offense as disorderly conduct and punishes such conduct by a fine of $50 or three months' imprisonment.

**3.** Whether one law repeals another on the same subject to which it does not expressly refer is largely a question of legislative intent; if both can have effect, both must stand.

Error to St. Clair. (Stevens, J.) June 11.—June 17.

Complaint for keeping house of ill-fame. Respondent brings error. Affirmed.

Attorney General *Moses Taggart* for the People.

*Jno. H. Mitchell* for respondent.

COOLEY, C. J. The information on which the respondent was convicted, charged that on the first day of November, in the year 1884, at the township of Port Huron, in said St. Clair county, and on divers other days and times between that day and the first day of March, 1885, at the township

aforesaid, he did unlawfully keep and maintain a certain-house of ill-fame, resorted to for the purposes of prostitution and lewdness, contrary to the form of the statute, etc.   The judgment upon this conviction was that the respondent be confined in the house of correction at Ionia for a period of nine months.

The statute under which the conviction took place is the following: "Every person who shall keep a house of ill-fame, resorted to for the purpose of prostitution or lewdness, shall be punished by imprisonment in the county jail not more than one year, or by fine not exceeding three hundred dollars." Rev. Stat. 1846, ch. 158, § 10; How. Stat. § 9286.

The respondent contends that this statute was repealed by implication in the passage of Act 136 of 1883 (Pub. Acts, p. 141), the first section of which enumerates the classes of persons who are to be deemed disorderly persons, and specifies, among others, "all common prostitutes ; all keepers of bawdy-houses, or houses for the resort of prostitutes; all drunkards, tipplers," etc.   The second section prescribes the punishment on conviction of being a disorderly person, which on a first conviction is not to exceed $50 fine, with costs of prosecution, or three months' imprisonment.   This, it is said, covers the ground of the other statute, and, being subsequent in time, necessarily repeals it.

Repeals by implication are not favored.   *Brown v. Mc-Cormick* 28 Mich. 215; *Breitung v. Lindauer* 37 Mich. 217; *Gordon v. People* 44 Mich. 485; *Patrick Ryan's Case* 45 Mich. 173.   The question of repeal is largely one of intent, and if the two statutes can stand and both have effect, they must be allowed to do so.

No words are made use of in the Act of 1883 expressive of an intent to repeal the statute first above recited.   The purpose to repeal, if it existed, must therefore be found in the fact that it seems to provide for the punishment of the same criminal conduct.   It will be seen, however, that the offenses punished under the two statutes are, in designation at least, different; the one being the offense of being

keeper of a house of ill-fame, and the other, the offense of being a disorderly person. It may be plausibly suggested that it was intended that the same conduct might, at the discretion of the prosecuting officer, be punished under either designation, as the case should seem to require. The same statute also enumerated among disorderly persons "all persons knowingly selling or giving intoxicating liquors to drunkards or tipplers, or other disorderly persons;" though it seems highly improbable that it was intended to repeal other legislation on that subject.

On the question whether one statute was intended to be left unaffected by another, it is sometimes well to examine the history of legislation on the subject or subjects to which they refer. In this case it will be found particularly useful.

The statute above recited, for the punishment of keepers of houses of ill-fame, first appears as part of the Revision of 1838, p. 647, and has been continued in force from that time to the present without any alteration whatever. But the Revision of 1838 also contained a chapter "Of Disorderly Persons," with an enumeration similar to that of the act of 1883; "all keepers of bawdy-houses or houses for the resort of prostitutes" being specified among others.

As the Revision was adopted as one act, no question can be made of the purpose that the whole should have effect. It is true that the leading purpose of the chapter on disorderly persons was to provide for their being required to give security for their good behavior; but it contained provisions under which they might be imprisoned at hard labor. Rev. Stat. 1838, p. 201. Like provisions are found in the Revised Statutes of 1846, p. 182, and these were carried into the compilation of 1857, p. 493; and with a slight change in 1865, not material to the present subject, into that of 1871, p. 644, and of 1881, How. Stat. § 1985. And the act of 1883 is, by its title, "An act to amend chapter fifty-three of the Compiled Laws of 1871, relative to disorderly persons," which chapter 53 is chapter 39 of the Revised Statutes of 1846, slightly amended in 1865, as above stated.

This history of legislation makes it perfectly evident that

a legislative purpose has existed in this State from the very first, to make the keepers of bawdy-houses liable to be dealt with as disorderly persons, though they were expressly made punishable under the proper designation of their offense. A change, therefore, in the statute specially aimed at disorderly persons, as such, affords no ground for an inference of an intent to change the statute for the punishment of keepers of houses of ill-fame as such. The legislative purpose that the enactments on the one subject should be unaffected by those on the other, has been manifest in all the legislation from 1838 to the present day.

There is no error in the record, and the conviction must stand affirmed.

The other Justices concurred.